# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SHERI S. SMITH,**

    **Plaintiff,**

                                                                         Civil Action 2:17-cv-950
                                                                         Chief Judge Edmund A. Sargus, Jr.
    **v.**                                                                  Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Sheri S. Smith ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 6), the Commissioner's Response in Opposition (ECF No. 12), and the administrative record (ECF No. 5). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                                              **I.     BACKGROUND**

Plaintiff protectively filed her application for a period of disability and disability insurance benefits on January 19, 2014. In her application, Plaintiff alleged a disability onset of September 8, 2008. Plaintiff's application was denied initially on March 31, 2014, and upon reconsideration on August 8, 2014. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Paul E. Yerian ("ALJ") held a hearing on March 14, 2016, at

which Plaintiff, represented by counsel, appeared and testified. Vocational expert Hermona C. Robinson, Ph.D. (the "VE") also appeared and testified at the hearing. On May 11, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On August 31, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors (ECF No. 6), Plaintiff advances two contentions of error. First, Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence. In Plaintiff's view, the ALJ relied on medical and opinion evidence that he incorrectly interpreted. The thrust of Plaintiff's argument is that the opinion evidence of record comprises a significant portion of the record and is consistent with a more restrictive RFC. Plaintiff further asserts that the ALJ cherry-picked the record "in an effort to support his own opinion." (Pl.'s Statement of Errors 8, ECF No. 6.) Second, Plaintiff contends that the ALJ failed to properly evaluate her statements regarding the intensity, persistence, and limiting effects of her symptoms. More specifically, Plaintiff argues that the ALJ inaccurately summarized Plaintiff's activities of daily living and failed to account for her extensive efforts to seek relief from her pain and other symptoms. Plaintiff concludes, therefore, that the ALJ's decision requires remand because it is not supported by substantial evidence.

## II. THE ADMINISTRATIVE DECISION

On May 11, 2016, the ALJ issued his decision. (R. at 60-72.) At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 8, 2008, the alleged onset date. The ALJ found that Plaintiff had the severe impairments of cervical disc replacement and degenerative disc disease of the cervical spine, status-post two cervical fusions; right shoulder rotator cuff impingement with degenerative changes, status-post right shoulder arthroscopy and right rotator cuff repair; diabetes mellitus, type II; and obesity. He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could not climb ladders, ropes, or scaffolds, but

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

could frequently climb stairs and ramps, stoop, kneel, or crawl; and occasionally reach overhead.

(R. at 64.) In reaching this determination, the ALJ followed a two-step process. The first ALJ concluded that "[a]fter careful consideration of the evidence, . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 65.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ reasoned as follows:

> Considering the criteria enumerated in the regulations for evaluating the claimant's subjective complaints, I conclude that the claimant's testimony is not fully consistent with or fully supported by the objective medical evidence. Moreover, the objective medical evidence does not conform to the severity of the alleged pain and other functional restrictions arising from the claimant's documented condition, and the claimant's objectively established medical condition is not of such severity as to reasonably be expected to produce disabling discomfort or other disabling functional limitations.

(R. at 68-69.)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy. (R. at 71-72.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 72.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff maintains that (1) the ALJ's RFC is not supported by substantial evidence and (2) the ALJ erred in evaluating Plaintiff's subjective statements

5

regarding the intensity, persistence, and limiting effects of her symptoms. The undersigned addresses each of these contentions of error in turn.

   A.   **The ALJ's RFC Determination**

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

In this case, the ALJ's decision amply supplies substantial evidence supporting his determination. In connection with his RFC determination, the ALJ discussed the record evidence, including objective medical evidence, opinion evidence, Plaintiff's symptoms, and Plaintiff's testimony. The ALJ offered a thorough discussion of the medical evidence and ultimately concluded that "[c]onsidering the medical evidence and opinions . . . , as well as the claimant's activities, I find that the claimant's subjective complaints and alleged limitations are not fully consistent with the evidence." (R. at 70.) Although the ALJ found that Plaintiff was not as limited as she alleged, the ALJ acknowledged, discussed, and accommodated Plaintiff's functional limitations by limiting her to light work with postural limitations, including only occasional overhead reaching. In reaching his RFC determination, the ALJ relied on opinion evidence in the record, specifically the opinions of state agency reviewing physicians James Cacchillo, D.O., and Elizabeth Das, M.D. He assigned "significant weight" to the opinions of Drs. Cacchillo and Das, explaining that that they were "consistent with the evidence" and "with a

6

limitation to a range of light work." (R. at 69.) Drs. Cacchillo and Das found that Plaintiff's allegations were "fully credible" and opined the following postural and manipulative limitations: Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; could stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday; could climb ramps and stairs frequently, but never climb ladders, ropes, or scaffolds; could stoop and crouch frequently; could crawl occasionally; and could perform limited occasional overhead reaching. (R. at 135-37, 150-51.) With the exception of limiting Plaintiff to frequent rather than occasional crawling, the ALJ's RFC mirrored the opined limitations. (*Compare* R. at 64, *with* R. at 135-37, 150-51.)

Plaintiff's contention that the ALJ erred by "cherry-picking" the evidence lacks merit. Significantly, Plaintiff does not challenge the ALJ's weighing and consideration of the opinion evidence. Rather, she maintains that the ALJ mischaracterized the evidence, arguing he erred in determining the opinions were inconsistent with the record, even though "the opinions make up a significant part of the record (8 exhibits)." (Pl.'s Statement of Errors 6, ECF No. 6.) The undersigned is not aware of any authority requiring an ALJ to include a particular RFC limitation based upon the quantity of record exhibits that support such a limitation. Regardless, Plaintiff misstates the proportion of the evidence comprised of opinions to which the ALJ gave limited weight. The medical evidence comprises several hundred pages of the greater-than 1,000 page record, whereas the discredited opinions account for fewer than thirty pages. (*See* R. at 373-77 (opinion from Dr. James Sardo); R. at 387-89 (opinion from Dr. Denise Choice); R. at 422-26 (opinion from Dr. Arvin Gallanosa); R. at 445-48 (opinion from Dr. Robert Stephenson); R. at 478 (opinion from Dr. Ralph Rohner); R. at 503, 506-08 (opinion from physical therapist Alice

Moneypenny); R. at 917 (opinion from Dr. Ying Chen); R. at 1011-12, 1017-18 (reports of work ability).) Moreover, other record evidence and opinions (in addition to the opinions of the state agency reviewing physicians) support the ALJ's determination. For example, Dr. H. Tom Reynolds opined that Plaintiff "could possibly perform light duty physical activity levels limiting motion of right upper limb at the shoulder," and physical therapist Joy Atwood opined that Plaintiff could "occasionally lift up to 17.5 lbs . . . [and] carry up to 20 lbs." (R. at 444, 460.) *See also* 20 C.F.R 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). Plaintiff's argument that discredited opinions support a more restrictive RFC does not persuade the undersigned that remand is necessary in view of the countervailing record evidence upon which the ALJ relied. Rather, as set forth above, "there is a zone of choice within which the decision-makers can go either way, without interference by the courts." *Blakely*, 581 F.3d at 406; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

In summary, the undersigned concludes that the ALJ's RFC determination is supported by substantial evidence. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.      The ALJ's Credibility Determination**

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).   SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements.   In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness.   *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them."   *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017).   The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms.   *See* SSR 16-3p at *2.   It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p.   Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

9

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of

10

medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

In this case, the undersigned concludes that the ALJ's detailed discussion supplies substantial evidence supporting his credibility finding and that he properly considered the requisite factors in evaluating Plaintiff's subjective statements. Contrary to Plaintiff's assertions, the ALJ included a lengthy and thorough discussion of the record evidence, which included a review of the objective medical findings. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). For example, the ALJ discussed the mild results of imaging studies and the normal results of EMG testing (*see, e.g.*, R. at 66-67 (identifying normal results of February 2009 EMG)); R. at 68 (noting that "follow up imaging studies [of the cervical spine] showed a stable appearance of both the anterior and posterior instrumentation (exhibit 31 F, p. 4)."), as well as results of physical examinations reflecting mild symptomology (*see, e.g.*, R. at 66 (noting that results from a May 2012 shoulder exam reflected "tenderness, decreased range of motion, and 4/5 strength, but with no signs of instability and she was neurovascularly intact"); R. at 68 ("Post-operatively, the claimant complained of some neck pain and paresthesia in the fourth digits; however, she was otherwise neurologically intact with no focal weakness.").)

The ALJ also reasonably considered the record evidence reflecting Plaintiff's activities of daily living. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th

11

Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). Contrary to Plaintiff's assertions, the ALJ accurately summarized Plaintiff's activities of daily living as follows:

> She testified that she [] did not perform any household chores, that she performed most of her personal care with her left arm, with help from her husband with some activities, and that she only drove about two times a week because of her limitations. However, the treatment notes indicate that she could perform her personal care independently, with only some modification due to decreased range of motion. Other notes reflect the ability to do yardwork, drive and lift light to medium weights. Additionally, despite standing two to three times during the hearing, the claimant was able to attend the hearing proceedings closely and fully.

(R. at 68.) The record supports the ALJ's findings. For example, the record supports the ALJ's observation that Plaintiff is able to perform her personal care, generally without assistance. (*See, e.g.*, R. at 462 ("[Plaintiff] is independent with activities of daily living . . . including: dressing, grooming, bathing, hygiene, [and] cooking . . . ."); R. at 505 ("The client reports that she is able to perform her personal care activities independently, although she has had to change the way that she does those activities secondary to her decreased ROM and strength and increasing pain."); R. at 551 (Plaintiff's reports, including "Can wash and bathe myself, [c]an dress myself, can do all my self care . . . ."); R. at 565 ("Can do all my self care . . . .").) The record also supports the ALJ's acknowledgment that Plaintiff has reported the ability to do yardwork, chores, drive, and lift up to medium weights. (*See, e.g.*, R. at 462 (reporting Plaintiff's ability to perform basic chores, although "[m]inimal assistance is required for laundry"); R. at 505 ("The client reports that she is . . . able to lift light to medium weights that are conveniently placed."); R. at 551 (Plaintiff reporting that she "can drive a vehicle, can ride in a vehicle, [and] can do yardwork").) Finally, in performing a "work related" assessment, Ms. Atwood observed that Plaintiff "demonstrated the ability to occasionally lift up to 17.5 lbs.

[f]loor to [w]aist, 15 lbs. [w]aist to [s]houlder, carry up to 20 lbs, push 29.6 lbs. of force, and pull 18.6 lbs. of force." (R. at 460.) Thus, although some record evidence support the conclusion that Plaintiff is more limited in her activities of daily living, (*see, e.g.*, R. at 424), the undersigned finds that substantial evidence supports the ALJ's findings with respect to Plaintiff's activities of daily living.

In addition, the ALJ properly relied upon the credited medical opinions in the record. First, Plaintiff's contention that the ALJ improperly relied on physical therapist Alice Moneypenny's report that Plaintiff can lift light to medium weights is unpersuasive. As the Commissioner correctly notes, Ms. Moneypenny's statement was based on Plaintiff's reported activities, and nothing in the ALJ's decision indicates that he interpreted this statement to mean Plaintiff could perform medium work as defined in 20 C.F.R. § 404.1567(c). (*Cf.* R. at 64 (RFC determination that Plaintiff can perform *light* work).) Rather, the ALJ's decision reflects that he considered Ms. Moneypenny's statements, together with the rest of the record evidence, as part of his evaluation of Plaintiff's statements. (*See* R. at 68 (explaining "[o]ther notes reflect the ability to do yardwork, drive and lift light to medium weights." (citations to exhibits omitted)).) Consistently, the ALJ later expressly recognized that "*the claimant has reported* having the ability to lift light to medium weights." (R. at 69 (emphasis added).)

Plaintiff's reliance on the credibility findings of the state agency reviewing physicians is likewise misplaced. Plaintiff correctly notes that Drs. Cacchillo and Das found Plaintiff to be fully credible, reasoning that "[Plaintiff's] statements regarding her impairments are consistent with the objective findings in [the] file[] and are considered credible." (R. at 135, 150.) As the Commissioner points out, however, Drs. Cacchillo and Das also found that Plaintiff's statements

13

about the intensity, persistence, and functionally limiting effects of her symptoms are not substantiated by the objective medical evidence alone. (R. at 135, 149.) Moreover, even though Drs. Cacchillo and Das found Plaintiff to be credible, they opined that she retained the functional capacity to engage in light work with postural limitations. As discussed above, the ALJ assigned significant weight to the opinions of Drs. Cacchillo and Das, a determination that Plaintiff does not challenge, and essentially mirrored the limitations they opined in his RFC determination. That is, to the extent Plaintiff alleged that she required limitations greater than that they and the ALJ assessed, Drs. Cacchillo and Das clearly did not find such allegations credible.

Finally, contrary to Plaintiff's arguments, the ALJ considered Plaintiff's attempts to find pain relief at length. (*See* R. at 65-67 (detailing Plaintiff's treatment history, including continuing reports of pain and associated treatments).) Plaintiff fails to acknowledge that the ALJ also observed that following Plaintiff's surgeries, she received only conservative treatments (*see* R. at 66 ("The claimant did not require any more aggressive treatment measures prior to her date last insured."); R. at 68 ("Follow up imaging studies [of the cervical spine] showed a stable appearance of both the anterior and posterior instrumentation (Exhibit 31F, p.4). She was released to being physical therapy in November 2013.")), and that she displayed some non-compliance with treatment recommendations (*see, e.g.*, R. at 68 ("Despite her pain complaints, she indicated that she was only taking pain medication about every other day." (citation omitted)); R. at 116 (Plaintiff's testimony that "I'm very, very concerned about becoming an addict. I take pain medication very, very rarely.")). *Cf. Richendollar v. Colvin*, No. 1:13-cv-495, 2014 WL 4910477, at *5 (S.D. Ohio Aug. 7, 2014) ("A claimant's failure to follow

14

treatment can indicate that he is not as disabled as alleged." (citing *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986))); *Tate v. Comm'r of Soc. Sec'y*, 467 F. App'x 431, 433 (6th Cir. 2012) (holding that substantial evidence supported ALJ's weighing of treating physician's opinion where there were substantial gaps in treatment); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment).

In sum, the undersigned finds that the ALJ properly evaluated the consistency of Plaintiff's statements regarding her symptoms and limitations and that substantial evidence support his credibility assessment. Although substantial evidence may also support an alternative finding, the undersigned agrees with the Commissioner that the ALJ's findings were within the ALJ's permissible "zone of choice." *See Blakley*, 581 F.3d at 406. Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## V. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo*

15

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE